1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   JACKIE RICHARDS,                          NO.  C12-1053-RSL-JPD

9                        Plaintiff,

10        v.
                                             REPORT AND
11   CAROLYN W. COLVIN, Acting                RECOMMENDATION
     Commissioner of Social Security,[1]
12
                         Defendant.
13

14         Plaintiff Jackie Richards appeals the final decision of the Commissioner of the Social

15   Security Administration ("Commissioner") which denied her applications for Disability

16   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17   of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18   administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19   the Commissioner's decision be REVERSED and REMANDED for further administrative

20   proceedings.

21

22         [1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
     Security.  Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure,
23   Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this
     suit.  **The Clerk of Court is directed to update the docket accordingly, and the parties are**
24   **ordered to update the caption on all future filings with the Court.**

1

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1981 and was 25 years old on the alleged disability onset date. Administrative Record ("AR") at 25.  She has a high school education.  AR 178.  Her past work experience includes employment as a pizza delivery driver, hotel/office cleaner, teacher's aide, and laundry worker.  AR at 25, 75, 173, 196.  Plaintiff was last gainfully employed in July 2007.  AR at 172, 196.

On November 6, 2007, plaintiff filed a claim for SSI and DIB, alleging an onset date of July 7, 2007.  AR at 15, 147-59.  Plaintiff asserts that she is disabled due to physical and mental impairments, including depression, anxiety, bilateral carpal tunnel syndrome, fibromyalgia, and back and hip pain.  AR at 35, 172.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 15, 88-94, 97-101.  Plaintiff requested a hearing which took place on January 13, 2010.  AR at 32-83.  On April 12, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform jobs existing in significant numbers in the national economy.  AR at 15-26.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On June 18, 2012, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

REPORT AND RECOMMENDATION - 2

1   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

2   Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

3   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

4   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

5   (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

6   medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*,

7   53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

8   whole, it may neither reweigh the evidence nor substitute its judgment for that of the

9   Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

10   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

11   must be upheld. *Id.*

12        The Court may direct an award of benefits where "the record has been fully developed

13   and further administrative proceedings would serve no useful purpose." *McCartey v.*

14   *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

15   (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

19   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

20   erroneously rejected evidence may be credited when all three elements are met).

21                        IV.     EVALUATING DISABILITY

22        As the claimant, Ms. Richards bears the burden of proving that she is disabled within

23   the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

24   Cir. 1999) (citations omitted). The Act defines disability as the "inability to engage in any

substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On April 12, 2010, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.    The claimant has not engaged in substantial gainful activity since July 7, 2007, the alleged onset date.

3.    The claimant has the following severe impairments: mild degenerative disc disease; fibromyalgia; bilateral carpal tunnel syndrome, status post release surgery on the right; obesity; depression; panic disorder; and pain disorder with psychological factors.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 5

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant is able to lift up to 20 pounds occasionally. She has occasional limits on all postures. She is able to perform simple tasks as well as some complex tasks, but not work requiring sustained attention to complex tasks. She is limited to minimal interaction with the general public.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on XXXXX, 1981 and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 7, 2007, through the date of this decision.

AR at 17-26.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1.  Whether the ALJ met her burden of production by citation to the occupations of Dietary Clerk, Sorter, and Clerk, General when these jobs are semi-skilled and the ALJ failed to identify transferable skills.

2.  Whether the ALJ erred when she indicated she gave Dr. Clifford's opinion significant weight but failed to adopt it in her residual functional capacity assessment.

---

[3] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

3.     Whether the ALJ gave sufficient reasons for rejecting Dr. Stowe's opinion that plaintiff needed to avoid employment with repeated hand motion.

4.     Whether the ALJ gave clear and convincing reasons for rejecting plaintiff's testimony.

Dkt. No. 14 at 1-2.

## VII.    DISCUSSION

### A.    The ALJ Did Not Err in Evaluating Plaintiff's Credibility

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting her testimony.  Dkt. 14 at 17.  The Commissioner responds that the ALJ improperly discredited plaintiff's testimony in this case.  Dkt. 15 at 4.

Credibility determinations are within the province of the ALJ's responsibilities and will not be disturbed unless they are not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. *Smolen*, 80 F.3d at 1281.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. *Id*.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Smolen*, 80 F.3d at 1284.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284.

As stated by the ALJ,

> The claimant alleges that her inability to work is limited by depression and problems with her hip and back.  She further reports that due to fibromyalgia, every joint in her body is sore, she is fatigued, and she has a hard time moving around without pain.  She reports that she has recurrent anxiety and panic attacks.  At the hearing the claimant testified that she is not able to work due to twitching in her hands, and depression that can make or isolate herself for 7-10 days at a time.  She reported that she feels paranoid around people and needs to keep her back to the wall.  She said that she will be able to sit for 30-45 minutes at a time, walk for a quarter mile to half a mile on a flat surface, and stand for 20 minutes at a time.  She said that she is able to lift up to 19 pounds from chair level, but not from the ground.

AR 21 (internal citations omitted).

The ALJ found that although plaintiffs medically determinable impairments could reasonably be expected to cause her alleged symptoms and limitations, her statements concerning the intensity, persistence, and limiting effects of the symptoms are not credible to the extent they are inconsistent with the ALJ's RFC assessment.  AR 21.  Specifically, the ALJ cited (1) inconsistency between plaintiff's allegations and a number of clinical findings, (2) inconsistency between plaintiff's allegations and activities of daily living, and (3) evidence of treatment noncompliance.  AR 21-22.

*1.     Inconsistency Between Testimony and Objective Medical Evidence*

First, the ALJ found plaintiff's allegations of disabling physical and mental limitations were inconsistent with the medical evidence in the record.   A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirements.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297

REPORT AND RECOMMENDATION - 8

(9th Cir. 1988).  "While subjective pain testimony cannot be rejected on the sole ground that is not fully cooperated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and it's disabling effects," even in cases involving fibromyalgia.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Here, plaintiff testified that she cannot work because of pain throughout her body, especially low back pain that radiates into her right leg, bilateral hand numbness and pain, and twitching in her hands.  AR 17-18, 21-22.  However, the ALJ found the medical evidence did not show that these impairments caused disabling functional limitations.  AR 21.  The ALJ noted plaintiff had minimal findings on examination.  She had normal gait, no tenderness of the spine, 5/5 strength throughout, normal reflexes, no motor or sensory deficits, normal range of motion in her fingers, no neurological deficits, and no evidence of serious injury.  AR 21, 266-67, 391-93, 415-17, 438, 440.  Nerve conduction studies showed no evidence of peripheral polyneuropathy in the upper or lower extremities.  AR 21, 417.  Likewise, mental status exam showed plaintiff was friendly and congenial, with good grooming, normal eye contact, organized thought process, adequate memory, adequate fund of knowledge, adequate attention and concentration, normal judgment and insight, and no abnormal thought content.  AR 22. Thus, the ALJ reasonably concluded the medical evidence did not support plaintiff's claim that her physical and mental impairments kept her from working.

While plaintiff may posit a different interpretation of the record, when evidence reasonably supports either confirming or reversing the ALJs decision, the court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Here, it is apparent the ALJ properly considered evidence of plaintiff's fibromyalgia, and the ALJ's interpretation should not be disturbed by this Court.

//

2.    *Inconsistency Between Plaintiff's Testimony and Her Daily Activities*

Second, the ALJ found plaintiff's daily activities were inconsistent with her alleged functional limitations.  AR 21-22.  The ALJ noted that plaintiff pushes a cart while shopping; uses her hands for buttons, shoelaces, zippers, and writing; can lift about 35 pounds; and gives herself a shot of growth hormone every day for fibromyalgia treatment.  *Id*.  The ALJ also noted plaintiff traveled to Idaho twice, flew to Tennessee, drove during a family trip to Yellowstone, and drives about four times per week.  *Id*.  She also testified that she reads, uses email, texts, plays online games and Nintendo Wii, and has about 80 friends on Facebook and MySpace.  *Id*.  Finally, the ALJ noted that plaintiff testified that she cannot handle children, but elsewhere reported that her only social interaction is with the children she babysits.  AR 22.

An ALJ may consider a claimant's daily activities when evaluating her credibility. *Light v. Social Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may not penalize a claimant for attempting to live a normal life in the face of her limitations.  *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  However, contradictions between a claimant's reported activities and her asserted limitations are an issue of credibility.  *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ reasonably concluded that plaintiff's alleged limitations of being unable to sit more than 45 minutes at a time, stand more than 20 minutes at a time, lift more than 19 pounds, and difficulty with her hands, were inconsistent with her testimony about her physical activities such as lifting 35 pounds, writing, traveling, driving, playing computer games, using social media, texting, emailing, and caring for children.  AR 21-22.

Plaintiff argues the ALJ erred in indicating that she had testified she could handle children, but elsewhere reported her only social interaction is with the children she babysits. Plaintiff points out the hearing testimony shows she testified that she could not handle birthday

parties, not that she could not handle children.  AR 54.  The Court agrees the ALJ misstated the record.  Nevertheless, the contradictions between plaintiff's activities and allegations of disabling limitations were a clear and convincing reason to discount her credibility.  *Molina v. Astrue*, 674 F.3d 1104, 112-13 (9th Cir. 2012) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

> ### 3.   Noncompliance with Recommended Treatment

Third, the ALJ discounted plaintiff's testimony because she failed to comply with recommended treatment to stop smoking and obtain mental health counseling.  AR 22. Specifically, the ALJ stated,

> the record contains evidence of treatment noncompliance, which suggests that the claimant's symptoms may not be as limiting as alleged.  She continues to smoke cigarettes in spite of repeated advice that this can exacerbate her back pain and fibromyalgia.  She testified that she has not gone to mental health counseling, as has been recommended, because no one in Jefferson County (where she lives) provides it, and DSHS will not pay for counseling outside of her county.  However, she also testified that her father has paid $20,000 over the past two years for alternative medicine fibromyalgia treatment in Bellevue.

*Id*. (citing AR 365, 375, 403.)

The Commissioner may deny benefits if the "claimant meets the disability criteria but failed to obtain treatment that would ameliorate [her] condition."  *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) (interpreting 20 C.F.R. §§ 404.1530 and 416.930).  However, failure to follow a recommendation to quit smoking may not generally be used against a plaintiff's credibility unless the cessation would restore the plaintiff's ability to work and the record supported this finding.  *Rousy v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985).  In *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000), the court held,

> We note that even if medical evidence had established a link between smoking and her symptoms, it is extremely tenuous to infer from the failure to give up

smoking that the claimant is incredible when she testifies that the condition is
serious or painful.  Given the addictive nature of smoking, the failure to quit is
likely attributable to factors unrelated to the effect of smoking on a person's
health.  One does not need to look far to see persons with emphysema or lung
cancer – directly caused by smoking – who continue to smoke, not because they
do not suffer greatly from the disease, but because other factors, such as the
addictive nature of the product impairs their ability to stop.  This is an unreliable
basis on which to rest a credibility determination.

Although the Ninth Circuit has not directly address this issue, it has found in an analogous

situation that an ALJ errs when she makes an adverse credibility determination based on the

inability of an obese person to lose weight.  *Orn v. Astrue*, 495 F.3d 625, 637-38 (9th Cir.

2007).

Here, even though plaintiff's treating physician, Bruce Stowe, M.D., advised plaintiff

that smoking could exacerbate her back pain and fibromyalgia, there is no evidence in the

record that smoking cessation would restore plaintiff's ability to work.  Furthermore, Dr.

Stowe specifically noted that plaintiff had "ongoing difficulty with smoking cessation," and

that she "genuinely lacks insight to these issues and their significance to her disability and

long-term health.  These issues would be best addressed with psychological counseling.  In the

absence of counseling I am not overly optimistic that she will gain insight to her chronic

medical problems, which will limit her ability to improve as well as for long-term health."  AR

375.  Plaintiff's failure to quit smoking was not a valid basis to discount her credibility.  *See*

*Orn*, 495 F.3d at 638 (holding that the failure to seek treatment cannot be held against a

claimant where the claimant has a good reason for not seeking more aggressive treatment).

Similarly, plaintiff's failure to obtain mental health counseling, as recommended, was

not a valid basis to discount her credibility.  The record shows plaintiff did not seek mental

health counseling because she could not afford it.  AR 61, 375.  Under these circumstances,

plaintiff's failure to obtain mental health counseling does not provide a valid basis for

REPORT AND RECOMMENDATION - 12

questioning the credibility of her accounts of her symptoms. *See Regennitter*, 166 F.3d at 1297 ("[W]e have proscribed the rejection of a claimant's complaints for lack of treatment when the record established that the claimant could not afford it."); *see also Orn*, 495 F.3d at 638. The fact that plaintiff's father paid for her fibromyalgia treatment is not a clear and convincing reason to discredit her testimony.

However, the elimination of any one reason does not necessarily mean the ALJ's entire credibility assessment is improper. *Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009). The ALJ's other two reasons for finding plaintiff less than fully credible are valid, despite the ALJ's error above.

B.   The ALJ Erred in Her Evaluation of the Medical Evidence

1.   *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn*, 495 F.3d at 631. A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey*

*v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be

supported by substantial evidence.  *Id.*

### 2.      *Limitations Found by Bruce Stowe, M.D.*

Plaintiff contends that the ALJ erred by rejecting the opinion of treating physician Dr.

Stowe regarding her manipulative limitations.  On April 2, 2009, Dr. Stowe completed a

physical evaluation form for the Washington State Department of Social and Health Services

("DSHS").  AR 361-65.  In a chart note attached to the evaluation, Dr. Stowe wrote, "As

regards any restrictions at this time, I would not recommend employment with repeated hand

motion as this would exacerbate her untreated [carpal tunnel syndrome]."  AR 365.  Dr. Stowe

also wrote, "Once [carpal tunnel syndrome] is addressed [she] should be employable."  AR

364, *see also* AR 358 ("I believe once [carpal tunnel syndrome] is evaluated & treated she

should be able to work.").

As Dr. Stowe's opinion was uncontradicted, the ALJ was required to provide clear and

convincing reasons to reject his opinion.  *Reddick*, 157 F.3d at 725.  The ALJ rejected Dr.

Stowe's opinion regarding plaintiff's manipulative limitations, finding them to be inconsistent

with plaintiff's daily activities.  AR 23.  Those activities were:  pushing a shopping cart; using

her hands for buttons, shoelaces, zippers, writing, and driving; lifting 35 pounds; emailing;

playing video games; and texting.  AR 22.

Plaintiff argues that these activities show that she can use her hands, but do not show

that she can perform repeated hand motion such as may be required in a work setting.  Dkt. No.

14 at 15.  The Court agrees with plaintiff that there is no evidence that plaintiff performed

these activities in a prolonged or repetitive manner as Dr. Stowe proscribed.  Plaintiff testified

that she drives short distances four times a week, uses her computer for brief periods at a time,

and texts for an unspecified period of time only when she is depressed.  AR 38, 51, 71.

1    The Commissioner argues that even if the ALJ erred in rejecting the opinion of Dr.

2    Stowe, the error is harmless because plaintiff subsequently received surgical treatment for her

3    right carpal tunnel syndrome.  The Commissioner notes that a subsequent DSHS evaluation by

4    Dr. Stowe in October 2009 did not mention carpal tunnel syndrome.  AR 371-75.  Thus, the

5    Commissioner contends that, at most, Dr. Stowe's opinion concerned a condition that lasted

6    less than one year, which is not long enough to establish disability.  The Court disagrees.

7    As plaintiff argues, the ALJ found plaintiff's bilateral carpal tunnel syndrome severe,

8    indicating that she found this impairment lasted for at least 12 months.  AR 18.  Moreover,

9    there is no evidence plaintiff had surgical treatment for her left carpal tunnel syndrome.

10   Although her left carpal tunnel syndrome was mild, there is no indication that Dr. Stowe's

11   manipulative limitations were limited to plaintiff's right hand.  Furthermore, the Court must

12   base its analysis on the ALJ's reasoning in her written decision, not on evidence in the record

13   the ALJ could have (but did not) adopt to support her decision.  *See SEC v. Chenery Corp.*, 318

14   U.S. 80, 88 (1943) ("We ... hold that an administrative order cannot be upheld unless the

15   grounds upon which the agency acted in exercising its powers were those upon which its action

16   can be sustained."); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot

17   affirm the decision of an agency on a ground that the agency did not invoke in making its

18   decision.").  Remand is warranted for the ALJ to reevaluate Dr. Stowe's opinion.

19                    *3.      Limitations Found by Thomas Clifford, Ph.D.*

20   On April 7, 2008, State agency psychologist Dr. Clifford completed a mental residual

21   functional capacity assessment.  AR 305-07.  Dr. Clifford found plaintiff was "not significantly

22   limited" in her ability to understand, remember, and carry out short simple instructions; but

23   was "moderately limited" in her ability to understand, remember, and carry out detailed

24   instructions.  AR 305.  In addition, he found plaintiff was "moderately limited" in her ability to

REPORT AND RECOMMENDATION - 15

1    maintain attention and concentration for extended periods, and to complete a normal workday

2    and workweek without interruptions from psychologically based symptoms and to perform at a

3    consistent pace without an unreasonable number and length of rest periods.  AR 305-06.  Dr.

4    Clifford opined, in relevant part, that plaintiff "can understand and complete simple tasks and

5    some detailed ones, although with occasional lapses of concentration and pace, primarily from

6    her pain disorder."  AR 307 (emphasis added).

7            The ALJ gave Dr. Clifford's assessment significant weight and found plaintiff could

8    "perform simple tasks as well as some complex tasks, but not requiring sustained attention to

9    complex tasks."  AR 23.

10           Plaintiff argues that, despite the fact that the ALJ stated she gave significant weight to

11   Dr. Clifford's opinion, she failed to adopt his opinion that plaintiff would have occasional

12   lapses of concentration and pace.  Plaintiff argues that the ALJ thus erred in failing to give any

13   reason for rejecting Dr. Clifford's opinion that plaintiff would have occasional lapses of

14   concentration and pace.

15           The Commissioner acknowledges that it is not entirely clear whether Dr. Clifford

16   thought plaintiff would experience occasional lapses of concentration and pace during all tasks,

17   or just when plaintiff was performing detailed tasks.  Nevertheless, the Commissioner argues

18   that the ALJ apparently understood Dr. Clifford's opinion to mean that plaintiff could

19   understand and complete simple tasks without lapses of concentration and pace, but would

20   experience lapses when performing complex tasks.  The Commissioner contends that this was

21   a rational interpretation of Dr. Clifford's opinion and should be upheld.  Dkt. No. 15 at 11.

22   The Court agrees with the Commissioner.

23           As indicated above, it is the role of the ALJ to determine credibility, resolve conflicts in

24   medical opinions, and resolve ambiguities.  *Andrews*, 53 F.3d at 1039.  The role of this Court is

1    limited.  When the evidence is susceptible to more than one rational interpretation, it is the

2    Commissioner's conclusion that must be upheld.  *Thomas*, 278 F.3d at 954.  Although the

3    interpretation of the record urged by plaintiff may be theoretically possible, it simply cannot be

4    said that plaintiff's view of the evidence is the only rational interpretation.  Accordingly, the

5    Court concludes the ALJ did not err in evaluating Dr. Clifford's opinion.

6                   C.       Remand Requires a Reevaluation of the Analysis at Step Five

7           Plaintiff contends the ALJ failed to meet her burden at step five by concluding that

8    plaintiff could perform semi-skilled jobs without identifying any transferable skills.  Dkt. No.

9    14 at 8.  The Court need not resolve these contentions here; the ALJ erred in evaluating the

10   medical opinion of Dr. Stowe as discussed above, and must necessarily reevaluate on remand

11   what impact, if any, this has on plaintiff's RFC and any hypothetical question that is posed at

12   step five to the vocational expert.

13                              VIII.    CONCLUSION

14          For the foregoing reasons, the Court recommends that this case be REVERSED and

15   REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

16   instructions.  A proposed order accompanies this Report and Recommendation.

17          DATED this 18th day of March, 2013.

18

19                                              *James P. Donohue*

20                                              JAMES P. DONOHUE
                                                United States Magistrate Judge

21

22

23

24

REPORT AND RECOMMENDATION - 17